## Highland Sewer and Water Authority v. Local Union 459 I.B.E.W.

*Robert L. Blough,* for plaintiff.

*Robert S. Glass,* for defendants.

SMORTO, P. J., O.C.D.S.P., July 19, 1973.—In this action, plaintiff, Highland Sewer and Water Authority, a nonprofit corporation engaged in the operation of a water and sewerage facility, seeks the application of the extraordinary remedy of injunction to compel certain specific employes who are on strike to return to their duties and to force the other striking employes to remain on call and to remain in Cambria County during the duration of the strike. The Authority bases its claim to injunctive relief on the basis of the existence of a clear and present danger to the health and safety of the public within the confines of its servicing area.

We issued the original order on the basis of the allegations contained in plaintiff's complaint. At the hearing which was held within two days of the issuance of the said order directing, inter alia, three specific employes to remain on duty, it was the burden and the duty of the Authority to prove, rather than merely allege, that a clear and present danger exists to the life and safety of the public. It must be a danger which is not speculative but real, not imagined but actual.

After attempting for more than seven hours to resolve this dispute, the court proceeded to a hearing on the merits. The hearing lasted until 11 p.m. In our judgment, the Authority failed to present facts that the strike here involved presents a clear and present danger within the meaning of the Public Employe Relations Act of July 23, 1970, P. L. 563 (No. 195),

43 PS §1101.101, et seq. and the pronouncements of our State and Federal appellate decisions. Furthermore, defendants stated in open court that they will return to their posts of duty in the event that an emergency occurs as a result of which the health and safety of the public is involved.

In the past, government and public employes did not have the right to strike as did the employes of the industrial sector. Public employes, lacking any legal weapon with which to enforce their demands and needs, were generally last on the totem pole of a fair and living wage. The legislature of this Commonwealth has given public employes the right to strike under certain given restrictions and exceptions. We now recognize that public employes, such as those employed by this utility, have the right to strike and through this means, to exert pressure on it. This right to strike cannot be curtailed and denied by the broad and speculative statement that a clear and present danger exists to the public. To do so would reduce the right to strike to a nullity and a farce. We will not, under the facts here presented, permit the use of the court's injunctive power to destroy the right of the public employe to strike for better wages and working conditions. To do so would be to relegate the public employe to his original status of having his economic needs subject to the whim and fancy of his employer.

The reason for Act 195 was to eliminate the inequities existing between public employes and those in the private industrial sector. By legislative fiat, we now seek to adjust this differential by giving the public employe a degree of emancipation not heretofore granted. This very morning we heard Secretary George Shultz announce and admit that, despite Phase IV, food prices will sharply increase. We must now more readily realize, and, what is more, promptly do some-

thing about the fact that it costs as much for a public employe to feed, clothe and provide shelter for his family as it does for anyone else on the economic scale. The public employe and his family suffer the ravages of a rampant inflation just as much as the other wage and salary earners of this Nation. The legislature has granted the right to strike. The court will not, under the circumstances here presented, take that right away.

From the record here presented, the services provided by the Authority can still be performed, and, in fact, have been performed during this strike with a relatively small degree of inconvenience. Every strike will produce certain inconveniences for the employer as it creates a loss of income to the employe. It is exactly this mutuality of inconvenience and loss that produces the seed for eventual accord and satisfaction.

We noted with particular interest the Authority's cross examination of the defendant Budd Parker, the employe whose duty it has been to maintain the quality of water furnished by the Authority. Mr. Parker proved to be a very intelligent, dedicated, highly knowledgeable, and capable employe. It is difficult for this court to conceive why such an employe so allegedly and singularly valuable to the Authority should now be forced to go on strike for better wages and working conditions. It is incredible that we should now be asked to force Mr. Parker to go back to work and thus use his God-given talents against him. To do so would be tantamount to the imposition of involuntary servitude. Furthermore, the record both on part of the Authority and defendants shows that Mr. Parker's duties can be carried on by the Authority's operating engineer. We do not see from this record where the other specifically named defendant employes or, in fact, any other employe should be forced to go back to work at this time.

Act 195 has created an entirely new ball game in

the field of public employe relations. The omnipresent right to strike now forces the governing authority to keep his welfare and interest in mind. The day will soon be gone when a public employe, be he a teacher, a utility worker or a sanitation department employe, will be forced to supplement his income with a "moonlighting" job or by applying for food stamps. Because under this act, it is the avowed public policy of this State that a public employe has the right, under given circumstances, to walk off his job, it is not within the prerogative of this court to order him back.

We, therefore, enter the following

### ORDER

And now, July 19, 1973, the preliminary order of July 16, 1973, is revoked and dissolved.